**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICK BENNETT | ) | 3:25-CV-00286 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF CORRECTION, | ) | |
| *Defendant*. | ) | May 8, 2026 |

## ORDER GRANTING MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Before the Court is Respondent Commissioner of Correction's motion to dismiss Petitioner

Erick Bennett's petition for writ of habeas corpus brought under 28 U.S.C. § 2254.  Because the

Court concludes that Petitioner failed to exhaust all of the stated grounds for relief, and because

the petition may be untimely, the Court **GRANTS** Respondent's motion and **DISMISSES**

Petitioner's habeas petition without prejudice.

### I.    FACTUAL BACKGROUND

The procedural background of this case is long and complex.  Petitioner was charged with

and convicted of murdering a man in 2009, *State v. Bennett*, 324 Conn. 744, 748 (2017),[1] and the

trial court sentenced Petitioner to fifty years' imprisonment in 2011.[2]  Petitioner then began to seek

several forms of direct and collateral review of his conviction.

---

[1] The Court may take judicial notice of "pleadings, orders, judgments, and other documents from prior litigation, including state court cases." *Musciotto v. Nardelli*, No. 3:19-CV-559 (KAD), 2019 WL 5086691, at *2 (D. Conn. Oct. 10, 2019) (internal quotations omitted); *Cuadrado v. Naugatuck Police*, No. 3:22-CV-00969 (SRU), 2023 WL 4133712, at *2 (D. Conn. June 22, 2023).

[2] *See* Connecticut DOC, *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num= 371221 (last visited May 8, 2026) (showing Petitioner as sentenced to 50 years' imprisonment on August 26, 2011). The Court takes judicial notice of the publicly available information on this website.  *See Ratches v. Guerrera*, No. 3:24-CV-1319 (SVN), 2025 WL 1411409, at *3 n.5 (D. Conn. May 15, 2025).

A.  Direct Appeal

First, Petitioner appealed his criminal conviction directly to the Connecticut Supreme Court.[3]  *Bennett*, 324 Conn. at 747.  That court affirmed Petitioner's conviction on March 14, 2017. *Id.* at 779.

B.  Petition for New Trial and Post-Judgment Motions to Dismiss

In January of 2013, while Petitioner's direct appeal was pending in the Connecticut Supreme Court, he filed a petition for new trial in a new action in the Connecticut Superior Court. *Bennett v. State*, No. NNH-CV-13-5034449-S, 2014 WL 1674095, at *1 (Conn. Super. Ct. Mar. 27, 2014).  The court granted a motion to strike as to three of Petitioner's five claims (and his request for "immediate relief and/or release"), and allowed two of the claims to go forward.  *Id.* at *9.  The record indicates that Petitioner later withdrew this petition and incorporated its claims into a state habeas petition filed on October 3, 2013.  *See* Resp. Ex. I-1, ECF No. 12-11 at 23; *Bennett v. Comm'r*, No. CV-14-4005763, 2021 WL2929948 (Conn. Super. Ct. June 25, 2021) (habeas court addressing claims from petition for new trial).

Then, in 2016, Petitioner filed three post-judgment motions to dismiss the information upon which he was convicted, alleging illegal searches and seizures and *Brady* violations, as well as a motion to correct an allegedly illegal sentence.  *See State v. Bennett*, 182 Conn. App. 71, 73 (2018).  The trial court denied the three motions to dismiss for lack of jurisdiction, and rejected the motion to correct Petitioner's sentence.  *Id.* at 74–75.  Petitioner challenged the denial of all four motions in an appeal filed with the Connecticut Appellate Court and, in May of 2018, the Appellate Court affirmed the denials.  *See id.* at 76–79, 83.  Petitioner did not seek discretionary review before the Supreme Court of Connecticut.

---

[3] A criminal defendant may appeal a murder conviction directly to the Connecticut Supreme Court.  *See* Conn. Gen. Stat. § 51-199(b)(3); *State v. Robles*, 348 Conn. 1, 5 (2023).

C. <u>State Habeas Corpus Proceedings</u>

On October 3, 2013, Petitioner filed a *pro se* petition for a writ of habeas corpus in Connecticut state court.[4]  In June of 2021, the state habeas court (Bhatt, J.) denied the petition after a ten-day trial.  *Bennett v. Comm'r of Corr.*, No. CV-14-4005763, 2021 WL 2929948 at *3, *29 (Conn. Super. Ct. June 15, 2021).  Petitioner appealed the denial of his state habeas petition to the Connecticut Appellate Court, which affirmed the state habeas judgment without explanation in a *per curiam* opinion filed in February of 2023.  *See Bennett v. Comm'r of Corr.*, 217 Conn. App. 901 (2023).  Petitioner sought discretionary review of the affirmance by the Connecticut Supreme Court.  On May 9, 2023, the Supreme Court declined to certify the appeal.  *See Bennett v. Comm'r of Corr.*, 346 Conn. 1019 (2023).

D. <u>Motions to Open and Vacate Judgment</u>

While Petitioner's habeas appeal was pending, Petitioner filed the first of three motions to open and vacate judgment in the state Superior Court.  The first motion ("Motion One"), filed in November of 2022 on the docket of the state habeas action, challenged the denial of state habeas relief as based on fraud and an improper conflict of interest engaged in by the State's Attorney and Connecticut Superior Court Judge Tejas Bhatt.  ECF No. 12-11.[5]  The state habeas court (Newson, J.) denied the motion to open and a petition for certification to appeal the denial of that motion.  *See* Order, Resp. Ex I-2, ECF No. 12-12; *Bennett v. Comm'r of Corr.*, 222 Conn. App. 689, 690 (2023) (describing the procedural history).  Petitioner's subsequent efforts to appeal were unsuccessful:  on December 5, 2023, the Connecticut Appellate Court rejected his appeal of the

---

[4] *See* State of Conn. Judicial Branch, *Superior Court Case Look-up* (TSR-CV14-4005763-S)*,* https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV144005763S (last visited May 8, 2026).

[5] The State of Connecticut Judicial Branch website indicates that this "motion to open and vacate judgment" was filed on November 23, 2022.  *See* State of Conn. Judicial Branch, *Superior Court Case Look-up* (TSR-CV14-4005763-S), https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV144005763S (last visited May 8, 2026).

habeas court's order, *Bennett*, 222 Conn. App. at 693, and on January 30, 2024, the Connecticut Supreme Court declined to certify the appeal, *Bennett v. Comm'r of Corr.*, 348 Conn. 948 (2024).

On January 18, 2024, shortly before the first motion to open reached final disposition, Petitioner filed a second motion to open ("Motion Two").  Mot. Two, Resp. Ex. M, ECF No. 12-16.[6]  This motion, filed on the docket of Petitioner's underlying criminal case, alleged fraud during his probable cause hearing and subsequent trial.  *Id.*[7]  On January 30, 2024, the Superior Court (Harmon, J.) denied Motion Two on the papers.  *See* Order, Resp. Ex. N, ECF No. 12-17 (memorandum of decision issued September 24, 2024).  Petitioner appealed.  Conn. App. Ct. Dkt No. AC 47780 (indicating appeal was filed) .  The appeal remains pending before the Connecticut Appellate Court.[8]

On August 5, 2024, Petitioner filed a third motion to open ("Motion Three").  Mot. Three, Resp. Ex. P, ECF No. 12-19.[9]  Motion Three, filed on the docket of the state habeas action, challenged Judge Newson's denial of Motion One, on the grounds that Judge Newson "ha[d] a special disqualifying relationship" with Judge Bhatt and was an "active participant" in Judge Bhatt's "open case/claims" against Petitioner.  *Id.* at 2.  In October of 2024, the Connecticut Superior Court (Schuman, J.) denied this motion, and Petitioner once again appealed.  *See* Order,

---

[6] Motion Two is dated as of January 15, 2024, but was officially stamped as filed by the clerk of the Superior Court on January 18, 2024.  None of the discrepancies between the date Petitioner wrote on his motions and the date the relevant courts actually accepted the motions for filing are material to the timeliness of the instant habeas petition.

[7] The State of Connecticut Judicial Branch website does not provide docket information in criminal cases more than 10 years after the date of sentencing.  The stamp on the provided exhibit indicates that the motion was received by the Clerk's Office of the Judicial District of New Haven Superior Court on January 18, 2024.

[8] The State of Connecticut Judicial Branch website shows that the Petitioner filed a reply brief in this matter on February 5, 2026, and that it was argued on April 23, 2026.  *See* State of Conn. Judicial Branch, *Appellate/Supreme Case Look-up* (No. 47780), https://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=91681&Type=AppealNo (last visited May 8, 2026).

[9] Motion Three is dated as of July 25, 2024, but was officially filed on the Superior Court docket on August 5, 2024.  *See* State of Conn. Judicial Branch, *Superior Court Case Look-up* (TSR-CV14-4005763-S), https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV144005763S (last visited May 8, 2026).

Resp. Ex. R, ECF No. 12-21; Conn. App. Ct. Dkt No. AC 48162 (indicating appeal was filed).[10] In September 2025, the Connecticut Appellate Court affirmed the denial. *Bennett v. Comm'r of Corr.*, 235 Conn. App. 903 (2025). Petitioner filed two petitions for certification to appeal to the Connecticut Supreme Court; both were denied on December 23, 2025. *See* Order, SC 250221; Order, SC 250226.[11]

E. Application for Writ of Mandamus

On August 8, 2024, Petitioner filed an application for writ of mandamus with the Connecticut Supreme Court. Pet. Writ App., Resp. Ex. W, ECF No. 12-26.[12] Petitioner requested that the court vacate the state habeas court's decision and the denial of Motion One. *Id.* The Connecticut Supreme Court denied the mandamus application in a summary order in November of 2024. *See* Order, Resp. Ex. Y, ECF No. 12-28.

F. The Present Action

On February 19, 2025, Petitioner filed the instant habeas petition. Pet., ECF No. 1. The petition itself does not contain Petitioner's substantive claims; rather, it refers to "Attachment A and B" as containing his habeas claims 1–21. *Id.* at 2–3. A document attached to the petition and titled "Attachment B" sets forth 21 claims. ECF No. 2 at 2–4.[13] Accordingly, the Court treats those 21 claims as the grounds for this habeas petition. The grounds are summarized as follows:

> 1) A conspiracy and/or conflict of interest existed among Judge Bhatt, Judge Newson and the State's Attorney such that it constituted a "fraud" and the petitioner thus did not receive

---

[10] *See* State of Conn. Judicial Branch, *Appellate/Supreme Case Look-up* (No. AC 48162), https://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=92428&Type=AppealNo (last visited May 8, 2026).

[11] *See* State of Conn. Judicial Branch, *Appellate/Supreme Case Look-up* (No. SC 250221), https://appellateinquiry.jud.ct.gov/CaseDetailPreAppeal.aspx?CRN=104912&Type=AppealNo (last visited May 8, 2026); State of Conn. Judicial Branch, *Appellate/Supreme Case Look-up* (No. SC 250226), https://appellateinquiry.jud.ct.gov/CaseDetailPreAppeal.aspx?CRN=104943&Type=AppealNo (last visited May 8, 2026).

[12] The writ application is dated as of July 23, 2024, but was officially filed on the Superior Court docket on August 8, 2024. *See* ECF No. 12-28.

[13] Petitioner's Attachment A, ECF No. 2 at 1, lists only six potential grounds for relief. As Attachment B is more comprehensive, and contains 21 claims—the number of claims Petitioner references within the petition, *see* ECF No. 1 at 3—the Court considers it to be the accurate list of Petitioner's grounds for relief.

meaningful redress through his state habeas case.

2) The criminal court lacked jurisdiction with respect to the case against the petitioner because the evidence against him was obtained through the use of a defective warrant.

3) The criminal court lacked jurisdiction with respect to the case against the petitioner because the state prosecutor failed to take and provide proof of his/her oath of office.

4) The criminal court lacked jurisdiction with respect to the case against the petitioner because an arraignment was defective and/or never happened at all.

5) Probable cause was founded upon perjury.

6) The criminal court lacked jurisdiction with respect to the case against Petitioner because he was not put to plea.

7) The State failed to disclose an investigation and arrest of the medical examiner who testified at Petitioner's criminal trial.

8) The State suppressed vital information about the crime laboratory.

9) The State suppressed 911 call and hospital information.

10) Testimony and/or a prior statement of witness Jennifer Matias was suppressed.

11) Information about witness Christopher Benjamin was suppressed.

12) The prosecution in conjunction with the Department of Correction "stole" the petitioner's trial strategy and suppressed related recordings.

13) Police Internal Affairs records were suppressed.

14) The jury was tainted, partial, and misinformed.

15) Criminal trial counsel Attorney Frank Cannatelli was ineffective.

16) Criminal trial counsel Attorney Joseph Jaumann was ineffective.

17) Criminal appellate counsel Attorney James Streeto was ineffective.

18) Petitioner is actually innocent.

19) The criminal trial was rendered unfair by prosecutorial impropriety.

20) Petitioner's conviction is a fundamental miscarriage of justice.

21) On appeal, Petitioner's brief(s) were limited in length, which constituted a fundamental miscarriage of justice and bias, and violated due process and equal protection.

*See* ECF No. 2 at 2–4.  Respondent moves to dismiss the federal habeas petition, asserting that it is untimely and that several of Petitioner's claims are unexhausted.  *See* Resp. Mot. to Dis., ECF No. 11 at 1.  Petitioner opposes the motion, *see* Pet. Opp., ECF No. 14,[14] and Respondent has filed a reply,  Resp. Reply, ECF No. 29.

## II.    LEGAL STANDARD

A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint, is governed by Federal Rule of Civil Procedure 12(b)(6).  *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018) (reviewing motion to dismiss § 2254 petition under Fed. R. Civ. P. 12(b)(6)).  To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555–57.

Because Petitioner filed his federal habeas action *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest."  *Triestman*, 470 F.3d at 474 (cleaned up).  "Despite the special solicitude that the Court must show [Petitioner] out of consideration for his *pro se* status," however, "his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)."  *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (internal quotation marks and citation omitted).

---

[14] Petitioner filed a supplemental response to the motion to dismiss on the same day that Respondent filed a reply.  *See* Supp. Opp., ECF No. 28.  Applying the special solicitude ordinarily afforded to *pro se* litigants, the Court considers Petitioner's supplemental response alongside his original response, although it is procedurally improper.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

**III.    DISCUSSION**

The Court concludes that  it cannot determine whether Petitioner's habeas petition is timely until predicate questions regarding Petitioner's collateral attacks on his conviction, which are still being litigated in the Connecticut state courts, are resolved.  The Court further concludes that, regardless of the petition's timeliness, it contains grounds that have not been exhausted in the Connecticut state courts, and thus that it should be dismissed without prejudice to refiling.

A.   Timeliness of Federal Habeas Petition

First, it is an open question whether the petition is timely.

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Section 2254 permits a federal court to entertain a petition for writ of habeas corpus challenging a state court conviction if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).

Prior to the enactment of AEDPA in 1996, "there was no formal limit on the time for filing" a habeas petition in federal court.  *Ross v. Artuz*, 150 F.3d 97, 99 (2d Cir. 1998).  AEDPA "wrought a significant change" by subjecting a habeas petition challenging a state court conviction to a one-year limitations period.  *Id.*  The one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  28 U.S.C. § 2244(d)(1)(A).  "Final judgment in a criminal case means sentence," *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (internal quotation marks and citation omitted), and direct review under § 2244(d)(1)(A) potentially includes review by the United States Supreme Court, *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).  Thus, courts have held "that the limitations period for state prisoners therefore begins to run only after the denial of certiorari or

the expiration of time for seeking certiorari." *Id.* (collecting cases).  Accordingly, for a habeas petitioner who does not seek certiorari, AEDPA's one-year statute of limitations begins running ninety days after the petitioner's appeal terminates in the state supreme court.  *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003).

But AEDPA's one-year statute of limitation may be "tolled," or paused, when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Such an application is considered "properly filed" under § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted).

The Connecticut Supreme Court affirmed the criminal judgment on March 14, 2017. *Bennett*, 324 Conn. at 779.  Because Petitioner did not petition the United States Supreme Court for a writ of certiorari, the one-year statute of limitations began running on June 12, 2017 (ninety days after the Connecticut Supreme Court affirmed the criminal judgment).  *See McKinney*, 326 F.3d at 96.  Thus, absent any tolling, any federal habeas petition—including this petition, filed on February 19, 2025—would be untimely under section 2244(d)(1)(A).  Accordingly, the timeliness of Petitioner's federal habeas petition turns on whether Petitioner's various collateral attacks on his conviction constitute "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment" and thus toll AEDPA's one-year statute of limitations.  28 U.S.C. § 2244(d)(2).

### 1. *State Habeas Petition*

Petitioner filed a state habeas petition before the Connecticut Supreme Court decided his direct appeal, tolling the statute of limitations that would have otherwise begun to run ninety days

9

after the Connecticut Supreme Court's decision.  *See* 28 U.S.C. § 2244(d)(2).  A state habeas petition, if "properly filed," operates to toll the AEDPA limitations period under Section 2244(d)(2).  *See Williams v. Comm'r of Corr.*, No. 3:18-CV-385 (KAD), 2019 WL 2015901, at *2 (D. Conn. May 7, 2019) (statute of limitations tolled where petitioner had filed a state habeas petition while direct appeal was pending); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*) (holding that "proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run").  The Court has no reason to conclude Petitioner's state habeas petition was not properly filed.  Thus, the statute of limitations remained tolled (*i.e.*, did not begin to run) at least until May 9, 2023, when the Connecticut Supreme Court extinguished Petitioner's state habeas challenge by denying his petition for certification to appeal the denial of his state habeas petition.  *See Bennett*, 346 Conn. 1019; *Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir. 1999) ("a state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures") *aff'd*, 531 U.S. 4 (2000); *Lopez v. Quiros*, No. 3:22-CV-565 (SVN), 2023 WL 2384112, at *11 (D. Conn. Mar. 6, 2023) (concluding statute of limitations began to run only after Connecticut Supreme Court denied petition for certification to appeal state habeas petition).  Thus, the one-year limitation period expired, at the earliest, on May 9, 2024.

In light of the Court's finding that the state habeas petition operated to delay the expiration of the limitations period until at least May of 2024, several of Petitioner's other post-conviction motions—specifically, Petitioner's motion for a new trial, post-judgment motions to dismiss, and the motion to correct an allegedly illegal sentence—are irrelevant to the AEDPA tolling analysis.  The motion for a new trial was withdrawn, and the motions to dismiss and the motion to correct

10

an allegedly illegal sentence reached final adjudication in 2018, long before the final disposition of Petitioner's state habeas case.

### 2.  Motions to Open/Vacate and Application for Mandamus

While all but one of Petitioner's efforts at post-conviction relief clearly do not extend the statutory limitations period beyond May 9, 2024, it remains an open question whether Motion Two does so and renders the instant petition timely.

Petitioner filed four motions relating to his conviction that were not resolved at the time the Connecticut Supreme Court denied review of the habeas petition on May 9, 2023, including three motions to open and/or vacate judgment (Motions One, Two, and Three) and a petition for a writ of mandamus.  Motion One, filed on October 10, 2022, reached final disposition by the Connecticut Supreme Court on January 30, 2024.  *See Bennett*, 348 Conn. 948.[15]  Motion Two, filed on January 18, 2024, remains pending before the Connecticut Appellate Court.  Motion Three, filed on August 5, 2024, reached final disposition on December 23, 2025.  *See* Order, SC 250221; Order, SC 250226.  Finally, the mandamus application was filed on August 8, 2024, and denied on November 12, 2024.  To calculate the end of the AEDPA limitations period in this case, the Court must consider whether these motions constitute "properly filed application[s] for State post-conviction or other collateral review" that further tolled the limitations period.  28 U.S.C. § 2244(d)(2).

As an initial matter, neither the Second Circuit nor this Court has previously issued a definitive ruling regarding whether motions to open and mandamus applications qualify as

---

[15] Because Petitioner filed this motion before the Connecticut Supreme Court extinguished his state habeas appeal on May 9, 2023, it would have operated to toll the statute of limitations until January 30, 2024, if it was a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment."  18 U.S.C. § 2244(d)(2); *see Bennett*, 346 Conn. 1019; *Abrams v. Comm'r of Correction*, No. 3:17-CV-1732 (MPS), 2019 WL 919581, at *15 (D. Conn. Feb. 25, 2019).

"application[s] for [Connecticut] post-conviction or other collateral review" under Section 2244(d)(2) and Connecticut state law, but other courts in the Circuit have treated similar motions as tolling AEDPA's statute of limitations. *See, e.g.*, *Collins v. Artuz*, 496 F. Supp. 2d 305, 312 (S.D.N.Y. 2007) (finding motion to vacate conviction operated to toll the limitations period); *Miller v. Fennessey*, No. 1:20-CV-00354, 2024 WL 2214808, at *14 (W.D.N.Y. May 16, 2024) (limitations period tolled by motion to vacate conviction and *coram nobis* motion). The Court concludes that Motion Two—Petitioner's attempt to reopen and/or vacate the criminal judgment against him on grounds that his probable cause hearing and subsequent trial were infected by fraud—is sufficiently analogous to the motions in *Collins* and *Miller* such that it may be capable of tolling the limitations period.

Petitioner's three other attempts at relief (Motions One and Three, and his mandamus application) collaterally attack the validity of post-conviction proceedings, rather than the criminal judgment itself. At least one Circuit has held that a motion to reopen post-conviction proceedings is an "application for State post-conviction or other collateral review" capable of tolling the limitations period. *See Streu v. Dormire*, 557 F.3d 960, 965 (8th Cir. 2009), The Fifth Circuit, on the other hand, has held that an application for a writ of mandamus does not qualify as an application for post-conviction or other collateral review under § 2244(d)(2). *See Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002). The Second Circuit does not appear to have opined on whether either motions to reopen or applications for writs of mandamus qualify. It is thus unclear, in the first instance, whether Section 2244(d)(2)'s tolling provisions are applicable to these challenges. For present purposes, the Court assumes, without deciding, that Motions One and Three and the application for mandamus relief qualify as applications for post-conviction relief or collateral

review under Section 2244(d)(2). But neither affords Petitioner any tolling-related relief, for the reasons explained below.

First, Motion One was not "properly filed" because it was untimely under Conn. Gen. Stat. § 52-212(a). That statute provides, in relevant part, that "[a]ny judgment rendered . . . in the Superior Court may be set aside, within four months following the date on which notice of judgment or decree was sent . . ." Conn. Gen. Stat. § 52-212(a) (eff. June 28, 2021).[16] Regardless of whether the judgment Petitioner sought to open was his criminal judgment (entered on August 26, 2011) or his habeas judgment (entered on June 15, 2021), Petitioner filed Motion One on November 10, 2022, well beyond the four-month limitation provided by § 52-212(a). *See* ECF No. 12-11 at 2.

Petitioner's invocation of the fraud exception to the state statute of limitations on the grounds that his first state habeas proceedings were tainted by a "conflict of interest" between the habeas judge and the state's attorney does not change this result. Order on Mot. One, Resp. Ex. I-2, ECF No. 12-12 at 2. Under Connecticut law, "[t]he power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time." *Billington v. Billington,* 220 Conn. 212, 217 (1991) (citation omitted). "A party that files an untimely motion to open based on fraud must show that fraudulent conduct induced the court to render the underlying judgment." *Moore v. Ferguson*, 232 Conn. App. 797, 805–06 (2025). Here, the Superior Court denied Motion One as untimely after finding no fraud existed. ECF No. 12-12 at 2. The denial was affirmed by both the Appellate Court, *Bennett*, 222 Conn. App. 689, and the Supreme Court, *Bennett*, 348 Conn. 948. Thus, because Motion One was untimely, it cannot be

---

[16] When Petitioner filed his first motion to open, an older version of the statute was in effect, but the current version of this statute contains the same relevant language. *See* Conn. Gen. Stat. § 52-212(a) (eff. October 1, 2023).

considered "properly filed" such that it would toll the statute of limitations. *See Moore*, 232 Conn. App. at 807 (affirming denial of untimely motion to open judgment because plaintiff failed to demonstrate fraud exception applied); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding that "[b]ecause the state court rejected petitioner's [post-conviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)"); *Allen v. Siebert*, 552 U.S. 3, 7 (2007) (post-conviction petition rejected by state court as untimely was not "properly filed" under section 2244(d)(2) and thus did not toll AEDPA's statute of limitations).

It remains an open question whether Motion Two, filed on January 18, 2024, operates to toll the AEDPA limitations period. Motion Two, like Motion One, asserted the fraud exception to § 52-212(a). ECF No. 12-16 at 2. The Superior Court denied Motion Two, finding it lacked jurisdiction because "once a defendant's sentence has begun . . . the court may no longer take any action affecting a defendant's sentence unless it *expressly* has been authorized to act," and thus that the fraud exception to the four-month statute of limitations did not extend to the criminal context. *See* ECF No. 12-17 at 3–4, 6–8. This decision is pending review by the Connecticut Appellate Court. If the Appellate Court affirms the Superior Court's denial of the motion, Motion Two was not "properly filed" such that it tolled the statute of limitations. *See*, *e.g.*, *Abdullah v. Strack*, No. CV 98-0192 (RJD), 1999 WL 389896, at *3 (E.D.N.Y. Apr. 21, 1999) ("Because an application for review is not 'properly filed' when it is filed in a court that has no jurisdiction over the claims, this application did not toll the one-year limitations period under the AEDPA.") (internal citation omitted). But if the Appellate Court finds that the fraud exception does apply such that Motion Two could have been filed at any time—or that Superior Court legally erred in finding it lacked jurisdiction over the motion—Motion Two may operate to toll AEDPA's statute of limitations and render this habeas petition timely. *See Abrams*, 2019 WL 919581, at *15

14

(successive state habeas petitions, each filed prior to the final disposition of the previous petition, operated to toll the limitations period until the conclusion of the last petition).

Motion Three and the application for writ of mandamus are irrelevant to the tolling question. Both were filed after Motion Two and reached final disposition before Motion Two. If Motion Two was "properly filed," it continues to toll the limitations period well past the final disposition of Motion Three and the mandamus application. And if Motion Two was not "properly filed" under AEDPA, the statute of limitations would have expired on May 9, 2024, and so the filing of Motion Three on August 5, 2024, and the filing of the mandamus application on August 8, 2024, would be irrelevant. Thus, these applications could not toll the statute of limitations, regardless of whether they met the Section 2244(d)(2) criteria. *See Rajcok v. Comm'r, Dep't of Corr.*, No. 3:21-CV-00369 (JAM), 2022 WL 543046, at *2 (D. Conn. Jan. 28, 2022) (concluding that state habeas petition filed after AEDPA's statute of limitations had expired "did not reset the federal limitations period").

In sum, the pendency of Motion Two before the Connecticut Appellate Court preserves a narrow possibility that Motion Two tolls AEDPA's limitations period, such that the instant habeas petition could be timely. Accordingly, the Court moves on to consider whether Petitioner's claims are exhausted.

### B.  Exhaustion

The Court concludes that some of Petitioner's claims are exhausted, but others are not, resulting in a mixed petition. Thus, it is appropriate to dismiss the petition without prejudice.

The Court may not grant a habeas petition "on behalf of a person in custody pursuant to the judgment of a State . . . unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]"  28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement

ensures that state courts have "a fair opportunity to pass upon [a] federal claim" before "a habeas petitioner seek[s] to upset his state conviction on federal grounds." *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (citing *Picard v. Connor,* 404 U.S. 270, 275 (1971).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 354, 365 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Thus, in Connecticut, a prisoner "must exhaust his state court remedies with regard to any claim he includes in a federal habeas petition by seeking review of that ground before the Connecticut Supreme Court." *Grant v. McGill*, No. 3:08-CV-1432 (JBA) (JGM), 2009 WL 1060468, at *1 (D. Conn. Apr. 20, 2009) (citing 28 U.S.C. § 2254(b)(1)(A); *Cotto v. Herbert,* 331 F.3d 217, 237 (2d Cir. 2003)). The petitioner must "inform[] the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye*, 696 F.2d at 191 (citing *Picard*, 404 U.S. at 276–77 and *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir. 1979)). Both the "essential factual allegations" and "essentially the same legal doctrine" asserted in the federal petition must have been considered by the Connecticut Supreme Court. *Id.* at 191–92 (citing, *inter alia*, *Picard*, 404 U.S. at 276).

In some instances, a federal habeas petition may be "mixed," meaning that it contains "both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). That is the case

here: some of Petitioner's 20 cognizable claims are exhausted, and some are not. Respondent concedes that Claims 2, 3, 4, 6, 7, 8, 9, 10, 12, 15, 16, and 17 are exhausted. *See* ECF No. 12 at 30–33. Accordingly, the Court considers whether the remaining claims—Claims 1, 5, 11, 13, 14, 18, 19, and 20—are exhausted, and whether Claim 21 is cognizable in the first instance.

### 1. Cognizability of Claim 21

First, the Court holds that Claim 21, which asserts that Connecticut's state courts "violated the petitioner's right to appeal" through "restrictions that violate the right to a fair trial/fair hearing," is not cognizable. Non-cognizable claims are "irrelevant to determining whether a habeas petition is a mixed petition." *Chase v. Russell*, No. 1:19-CV-617 (EAW) (LGF), 2024 WL 1739708, at *12 (W.D.N.Y. Apr. 23, 2024).

Both Respondent and Petitioner characterize this claim as relating to the "Connecticut Appellate Court's briefing page limitation." ECF No. 12 at 34–35; ECF No. 28 at 3, 7–8 (arguing "the pro se petitioner was unfairly restricted to a 40 page brief," such that he was unable to fully develop his claims, "rendering state corrective process[es] ineffective and unavailable" to protect his rights). The page limitations are established by state law, *see* Conn. Practice Book, Rules of App. P. § 67-3, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).

The Second Circuit has recognized that "errors under state law" may nonetheless "result in cognizable violations of a constitutional right to due process," *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001), and Petitioner suggests that the Connecticut appellate courts' page limitations on briefs violates due process, *see, e.g.*, ECF No. 28 at 7–8, but "[d]ue process challenges based on page limits have been dismissed by federal courts." *Does v. Mills*, No. 04-CV-2919 (RWS), 2005 WL 900620, at *9 (S.D.N.Y. Apr. 18, 2005) (concluding that state regulation "impos[ing] a 30-page limit on legal memoranda" submitted to a hearing officer "fail[ed] to state a procedural due

17

process claim" and collecting cases); *see also United States v. Radin*, No. 16-CR-528 (HBP), 2017 WL 2226595, at \*6 (S.D.N.Y. May 22, 2017) (concluding that "a page limit on defendant's submission is not a violation of due process"); *Watts v. Thompson*, 116 F.3d 220, 223 (7th Cir. 1997) (holding that "[e]nforcing page limits and other restrictions on litigants is rather ordinary practice," and not a due process violation). Accordingly, Claim 21 is not cognizable, so the Court need not reach the question of whether it is exhausted.

### 2. Claims 1 and 20

Claims 1 and 20 are exhausted. Claim 1 alleges that Judges Bhatt and Newson presided over Petitioner's habeas proceedings without disclosing purported conflicts of interest. *See* ECF No. 2 at 2. Claim 20, according to Respondent, "reiterates the claim set forth in Claim 1," ECF No. 12 at 34. The Court agrees with this characterization, as Claim 20 advances a general conflict of interest in the Connecticut courts, resulting in an asserted violation of due process. ECF No. 2 at 4.

Judge Bhatt's alleged conflict of interest formed the basis for Motion One. On January 30, 2024, the Connecticut Supreme Court denied Petitioner's petition for certification to appeal from the Appellate Court related to Motion One. *Bennett*, 348 Conn. 948. And the alleged conflicts of interest of both Judges Bhatt and Newson were raised by Petitioner in Motion Three, which also has been fully resolved in the state courts, by way of denial of a petition for review in the Connecticut Supreme Court. *See Bennett*, 235 Conn. 903. Thus, as the conflict of interest claims relating to both Judges Bhatt and Newson have reached final disposition before the Supreme Court, Claims 1 and 20 are fully exhausted.

### 3. Claim 5

Claim 5, which alleges that the Connecticut courts violated Petitioner's constitutional rights by "ignor[ing] the petitioner's claim that his probable cause hearing was by the use of

18

p[er]jury," is unexhausted. *See* ECF No. 2 at 2 (caps omitted). In his supporting memorandum of law, Petitioner asserts that a detective provided false testimony regarding physical evidence and DNA analysis at his probable cause hearing. Memo. of Law, ECF No. 2-1 at 24. Specifically, Petitioner alleges that Detective Burstein committed perjury by testifying at the probable cause hearing that a "screw suspected from being from a knife" was found in Petitioner's car, and that blood from the item tested positive for the victim's DNA in 2009. *Id.* Petitioner alleges that later, at the criminal trial, evidence showed that the "screw" was not tested until 2010, and that the discrepancy is indicative of perjury. *See id.*

A claim that the state's detective committed perjury at the probable cause hearing has not been exhausted. Petitioner referenced the concept of perjury in the first claim of his amended "all-encompassing" state habeas petition, labeled "Truth Fact claim 1. Miscarriage of Justice." *See* Am. State Habeas Pet., Resp. Ex. D-1, ECF No. 12-4 at 16 ("there is a lack of jurisdiction, because the warrant was illegally non executed, thus the court, jury and the defendant [were] misle[d] by perjury, of the testimony of the detective[]s who testified that they executed the warrant and found evidence").[17] General allegations regarding the timing of the DNA testing, in the context of alleged Fourth Amendment violations, were also included in the petition's first claim. *See id.* at 14 ("the search & seizure was unreasonable, due to the fact that . . . the time stamp on the warrant for the crime lab receiving evidence is stamped 2010 July 15, but the detectives gave testimony that they sent this evidence on 2009 July 15").

Upon review of the record of Petitioner's state habeas proceedings, the Court finds that a claim of perjury relating to the detective's testimony at the probable cause hearing was not "fairly

---

[17] The state habeas court acknowledged Petitioner made several filings relating to his habeas case, but that the last filing appeared to be "all-encompassing." *See Bennett*, 2021 WL 2929948, at *1. It used this document in the process of clarifying Petitioner's claims prior to the state habeas trial, described in more detail below. See Tr., Resp. Ex. D-2, ECF No. 12-5 at 3–4. Petitioner did not object to this approach. *Id.*

19

presented" to the state habeas court.  On the first day of the habeas trial, before the presentation of evidence, Petitioner "clarified" his claims for the state habeas court.  *Bennett*, 2021 WL 2929948, at *1;[18] *see* Tr., Resp. Ex. D-2, ECF No. 12-5 at 4 (confirming with Petitioner that the amended petition contained the "broad outlines of his allegations," and acknowledging "this is going to take a little bit of time, but I think it would help all of us if we could go through this to understand what exactly the allegations are").  During this process, Petitioner clarified that his first claim, "Miscarriage of Justice," referred to the "[]cumulative effect" of all the errors in his case.  *Id.* at 7.  Petitioner also clarified that he intended to assert a separate claim of perjury as to a witness in his probable cause hearing, Christopher Benjamin.  *Id.* at 14–15.  The court asked: "[T]he next page . . . is perjure testimony.  So that's a separate issue that you're claiming Benjamin perjured himself?"  *Id.* at 15.  Petitioner replied "Right."  The court then asked again: "[S]o here the claim is not that the state did anything wrong or anybody else.  It's just that the witness himself perjured himself?," and Petitioner responded that his claim was that "the state allowed him to perjure himself."  *Id.*  The transcript contains no references to an allegation of perjury by a state detective.

Accordingly, the state habeas court evaluated a claim of perjury as to "a key witness, Christopher Benjamin, [who] was permitted to perjure himself at trial."  *Bennett*, 2021 WL 2929948 at *2, *23.  The record indicates that Petitioner did not make a claim of perjury by the state detective at his probable cause hearing.  Had he sought to make a perjury claim similar to his claim regarding Christopher Benjamin, he could have clarified that in the lengthy colloquy with the state habeas judge prior to trial.  Nor did Petitioner reference a perjury claim in his briefs before the Connecticut Appellate Court or Connecticut Supreme Court.  *See* Pet. App. Br., Resp. Ex. F,

---

[18] Having reviewed the record, including Petitioner's amended state habeas petitions, the Court notes that Petitioner's claims before the state habeas court blended together various legal concepts, making it difficult to discern the claims at issue.  The Court thus finds that it was reasonable for the habeas trial court to seek to clarify them prior to trial.

ECF No. 12-8 at 3–5; Pet. Cert. Br., Resp. Ex. G, ECF No. 12-9 at 3–10.  Accordingly, Petitioner did not "fairly raise" a claim of perjury relating to the detective's testimony.  *See Daye*, 696 F.2d at 191 (to be exhausted, both the "essential factual allegations" and "essentially the same legal doctrine" asserted in the federal petition must have been considered by the Connecticut Supreme Court); *Grant*, 2009 WL 1060468, at *1 (a habeas petitioner must "seek[ ] review of th[e] ground before the Connecticut Supreme Court"); *see also Abrahams v. Comm'r of Corr.*, No. 3:10-CV-519 (MRK), 2010 WL 5093113, at *6 (D. Conn. Dec. 8, 2010) (noting that habeas petitioner could "fully exhaust [his] claims by appealing the Superior Court's decision . . . to the Appellate Court and then seeking review of the Appellate Court's decision in the Connecticut Supreme Court").

Construing Petitioner's *pro se* papers liberally, Petitioner's federal habeas claim that "his probable cause hearing was by the use of p[er]jury," Pet. Ex., ECF No. 2 at 2, could also be read to encompass his argument that Benjamin committed perjury at Petitioner's probable cause hearing.  Petitioner's brief in the instant case references allegedly false testimony given by Benjamin in the context of Claim 11.  Memo. of Law Cont., ECF No. 2-2 at 9, 11.  The state habeas court recognized Petitioner's argument that Benjamin, who testified at the probable cause hearing and the trial, "committed perjury in several ways and the state permitted that perjured testimony to stand."  *Bennett*, 2021 WL 2929948, at *23.

Even if Petitioner did intend to raise the issue of Benjamin's alleged perjury in the instant habeas petition, though, he failed to "fairly present" that claim to Connecticut's reviewing courts.  The exhaustion requirement requires a habeas petitioner to fairly present his or her claim to the Connecticut Appellate Court and then the Connecticut Supreme Court.  And, as described above, a habeas petitioner must assert in each of those courts "all of the essential factual allegations" and "essentially the same legal doctrine" asserted in his federal petition.  *Daye*, 696 F.2d at 191–92.

21

Petitioner appealed the habeas judgment to the Connecticut Appellate Court, ECF No. 12-8, and subsequently petitioned for certification to the Connecticut Supreme Court. ECF No. 12-9. Petitioner "presented" a claim concerning Benjamin in his briefs to those courts, *see* ECF No. 12-8 at 4 (Claim 10); ECF No. 12-9 at 7 (Claim 10), but Petitioner did not do so "fairly" such that he "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye*, 696 F.2d at 191. In both briefs to Connecticut's reviewing courts, Petitioner's claims concerning Benjamin are directed at the suppression of information about Benjamin, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See* ECF No. 12-8 at 4 (stating that the trial court and prosecutor "suppressed information about the witness Christopher Benjamin, in violation of *Brady v. Maryland* and [the] Confrontation Clause" (caps omitted; emphasis added)); ECF No. 12-9 at 7 (arguing same). Neither brief frames this as a subornation of perjury claim.

*Brady* and subornation of perjury claims are entirely distinct, requiring different proofs. *Compare United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) ("To establish a *Brady* violation, a defendant must show (1) that the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued") (internal quotation marks omitted); *with Calderon v. Keane*, 115 F. App'x 455, 457 (2d Cir. 2004) (summary order) ("[T]o challenge a conviction based on the prosecution's use of false testimony, a habeas petitioner had to prove that: (1) false testimony was introduced; (2) the prosecutor knew or should have known that the testimony was false; (3) the false testimony went uncorrected; and (4) there was a reasonable likelihood that the false testimony could have affected the judgment of the jury"). Because these claims require different proofs, they do not involve "essentially the same legal doctrine," *Daye*, 696 F.2d at 192, such that Petitioner did not "fairly present" his subornation

22

of perjury claim concerning Benjamin to the state courts by presenting the claim as a *Brady* claim. *See Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir. 1984) ("[T]o satisfy the exhaustion requirement, a prisoner must have 'fairly presented' *the same legal claim* to the state courts that he presents in his federal habeas petition") (emphasis added) (citing *Daye,* 696 F.2d at 191–92). Therefore, Claim 5, whether framed as a claim of perjury by an investigating detective or by Benjamin, is unexhausted.

### 4. Claim 11

The Court concludes that Claim 11, which alleges that "the criminal trial judge and prosecutor suppressed information about the State[']s witness Christopher Benjamin[], in violation of *Brady v. Maryland*" and "the Confrontation Clause[,]" ECF No. 2 at 3, is exhausted. Respondent claims that "[t]here are several parts to this claim and it is not entirely exhausted." ECF No. 12 at 32 (emphasis omitted).

Respondent concedes that, to the extent the claim alleges *Brady* violations relating to the suppression of Benjamin's prior criminal history, it is exhausted. *See id.* Respondent also contends, however, that Claim 11 alleges "judicial bias on the basis of the trial judge's prior knowledge of Benjamin" and "petitioner's claims that Benjamin perjured himself," and that those portions of this claim are unexhausted. *Id.* To the extent Petitioner asserts Benjamin's alleged perjury as a ground, it is addressed with respect to Claim 5 above, and is unexhausted. And the Court does not read Claim 11 as suggesting any challenge to judicial bias or perjury; rather, it focuses only on suppression of information about Benjamin, and the resulting alleged violation of *Brady* and the Confrontation Clause. ECF No. 2 at 3. Accordingly, the Court rejects Respondent's argument and finds that Claim 11 is exhausted.

###### 5. Claim 13

Claim 13, which alleges that "the State suppressed evidence of police Internal Affairs records, in violation of *Brady v. Maryland*" and "the Confrontation Clause," is not exhausted. *See* ECF No. 2 at 3 (caps omitted; emphasis added).    Such a claim has not been fairly presented to the Connecticut courts.

To the extent Petitioner raised a claim concerning "police Internal Affairs records" in his state habeas petition, the habeas court addressed it as an ineffective assistance of counsel claim, not a *Brady* or Confrontation Clause claim.  In the amended state habeas petition, Plaintiff alleged, in relevant part, that trial counsel "failed to declare a mistrial when the state trial judge refuse[d] the Petitioner to have impeachment evidence from the police records and/or files containing any complaints or misconduct to use for impeachment and trial strategy." *See* ECF No. 12-4 at 116. The state habeas court summarized Petitioner's "clarified" claims, including his claim regarding internal affairs records, in its written decision. *E.g.*, *Bennett*, 2021 WL 2929948 at *25, 27 ("Bennett argues that trial counsel were ineffective for . . . failing to properly argue for an *in camera* inspection of internal affairs records of testifying police officers," and appellate counsel were ineffective for "failing to preserve and raise issues related to internal affairs records").

The state habeas court denied the claim regarding Petitioner's trial counsel because Petitioner "ha[d] not provided th[e] court with the internal affairs records of the officers in question" such that it could determine whether Petitioner was prejudiced under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at *26.  The court likewise denied the claim regarding Petitioner's appellate counsel for failure to show prejudice, and because counsel's choice not to raise the internal affairs records issue was a matter of strategy rather than incompetence. *Id.* at *28.   Thus, to the extent Plaintiff raised a separate *Brady* or Confrontation Clause claim in his

24

state habeas petition relating to police internal affairs records, he appears to have abandoned that claim in the process of clarifying his claims before the state habeas trial. *See* ECF No. 12-5 at 21.

In Petitioner's briefs before the Connecticut Appellate and Supreme Courts, however, Petitioner reframed his claim concerning "police Internal Affairs records" as he does here—as a *Brady*/Confrontation Clause claim, instead of the ineffective assistance of counsel claim that the state habeas court analyzed. *See* ECF No. 12-8 at 3 (Claim 1); ECF No. 12-9 at 3 (Claim 1). "*Brady* and its progeny are grounded in the Due Process Clauses of the Constitution," *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001), whereas "[i]neffective assistance of counsel claims . . . are grounded, of course, in the Sixth Amendment right of criminal defendants to 'the Assistance of Counsel,'" *Greiner v. Wells*, 417 F.3d 305, 318 (2d Cir. 2005) (quoting U.S. Const. amend. VI). Thus, the *Brady* claim Petitioner raised on appeal is distinct from the ineffective assistance of counsel claim he raised in the habeas court. The Appellate Court summarily affirmed the habeas court's order, *Bennett*, 217 Conn. App. 901, and on May 9, 2023, the Supreme Court declined to certify the appeal, *Bennett*, 346 Conn. 1019. Thus, neither appellate court addressed the suppression of police internal affairs records under *Brady* or the Confrontation Clause.

In Connecticut, "[i]t is axiomatic that the appellate tribunals of this state are not bound to consider claims of law that are not distinctly raised at trial." *State v. Ramon A.G.*, 336 Conn. 386, 395 (2020) (citing Conn. Practice Book § 60-5; *State* v. *Edwards*, 334 Conn. 688, 703 (2020)). "[W]hether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." *Id.* "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the

25

trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." *State v. Bester*, 353 Conn. 720, 727 (2025).

Thus, the Appellate Court was not required to consider Plaintiff's *Brady*/Confrontation Clause claim regarding the police internal affairs records, which was first raised before it.  In light of the state habeas court's thorough approach to clarifying and evaluating Plaintiff's claims—and its treatment of this claim as one relating to the ineffective assistance of counsel, rather than a *Brady* or Confrontation Clause violation—the Court cannot find that Petitioner articulated his claim with sufficient clarity to place the trial court on reasonable notice of it such that it was preserved on appeal.

Connecticut recognizes an exception to the rule that appellate courts need not pass upon issues not raised at the trial court, where the issue is a constitutional claim implicating fundamental rights and the trial court record is adequate for appellate review.  *See Bester*, 353 Conn. at 727 (citing *State v. Golding*, 213 Conn. 233, 239–40 (1989)).  However, that exception does not afford Petitioner any relief here.  In Connecticut, "*Golding* review is available in a habeas appeal only for claims that challenge the actions of the habeas court." *Moye v. Comm'r of Corr.*, 316 Conn. 779 (2015) (holding that "*Golding* review [wa]s not available for the petitioner's unpreserved ineffective assistance of counsel claim because that claim does not arise out of the actions or omissions of the habeas court itself").  Because Petitioner's *Brady* claim challenged the actions of the *trial* court, not the *habeas* court, his *Brady* claim is not subject to *Golding* review.  *See Madera v. Comm'r of Corr.*, 221 Conn. App. 546, 567 n.11 (2023) (declining *Golding* review of unpreserved challenge to a sentencing error because the claim "relate[d] to the petitioner's criminal trial, [and] does not challenge the actions of the habeas court").

A claim that is not subject to *Golding* review may in some cases be reviewable for plain error or under the reviewing courts' supervisory powers. *See Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Connecticut,* 311 Conn. 123, 155 (2014) (noting that, "*in addition* to the authority to review unpreserved claims under the plain error doctrine and *Golding*, a reviewing court has the authority to review such claims under its supervisory power" (emphasis original)). But plain error review is likewise inapplicable here.  It is "reserved for truly extraordinary situations in which the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings[.]" *State v. Kyle A.*, 212 Conn. App. 239, 259 (2022), *aff'd*, 348 Conn. 437 (2024) (internal quotation marks omitted); *see also State v. Blaine*, 334 Conn. 298, 305 (2019) (observing that "plain error review is reserved for only the most egregious errors" (internal quotation marks omitted)).  And a reviewing court will review a claim under its supervisory powers "only in the rare case in which fairness and justice demand it"— namely, where "the issue at hand" is "of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole."  *State v. Rogers*, 344 Conn. 343, 355 (2022) (cleaned up).

Neither the appellate court nor the Supreme Court saw fit to review the merits of the claimed suppression of internal affairs documents, suggesting neither perceived this issue to be subject to plain error review.  And, in any event, a habeas petitioner does not "fairly present" a claim "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered" in the absence of "'special and important reasons.'" *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (citation omitted); *see also Bell v. Cone,* 543 U.S. 447, 451 n.3 (2005) ("[A]s a general matter, the burden is on the petitioner to raise his federal

claim in the state courts at a time when state procedural law permits its consideration on the merits." (citing *Baldwin*, 541 U.S. at 30–32)).

As such, under *Castille*, the claim was not fairly presented to the state courts. *See Acosta v. Artuz*, 375 F. Supp. 2d 173, 179–80 (E.D.N.Y. 2005) (concluding that because unpreserved error "was presented in a context where it would not ordinarily have been considered, petitioner's claim, to the extent that it is based thereon, fails the 'fair presentation' tests articulated in *Castille* and *Bell*"), *aff'd*, 575 F.3d 177 (2d Cir. 2009) (stating that rule permitting Appellate Division to review unprotested errors "[a]s a matter of discretion in the interest of justice" "appear[ed] to bring the *Castille* rule to bear and signals caution in concluding that unprotested claims *not* addressed by the Appellate Division are exhausted" (emphasis original; internal quotation marks and citation omitted)). Connecticut's procedure for plain error review "in the interests of justice" is similar to the state procedures that were the subject of *Castille* and *Acosta*. *See* Conn. Practice Book, Rules of App. P. § 60-5; *Blumberg Assocs. Worldwide, Inc.,* 311 Conn. at 155. Thus, the Court concludes that Claim 13 is unexhausted.

### 6. Claim 14

Claim 14, which asserts that the state court "ignored the Petitioner's claim that the Petitioner was convicted by a tainted, partial[,] and misinformed jury," is exhausted. Pet. Ex., ECF No. 2 at 3 (caps omitted).

As an initial matter, the Court notes that Claim 14 asserts a general allegation of jury bias, but does not specifically identify why Petitioner believes the jury to have been "tainted, partial, [or] misinformed." Respondent's motion to dismiss, however, characterizes Claim 14 as the same claim that was raised in the state habeas proceedings. ECF No. 12 at 33 ("[Claim 14's] focus is an allegation that the petitioner was convicted by a 'tainted, partial, and misinformed' jury. Specifically, [Petitioner] claims that a jury instruction video violated his constitutional rights. The

28

state habeas court denied the claim for lack of any legal support or analysis.").  Accordingly, and construing the federal habeas petition to raise the strongest claim it suggests, the Court reads Claim 14 as asserting bias based on the presentation of a "state-sponsored video" rather than merely presenting vague allegations that the jury was biased against Petitioner.

The state habeas court acknowledged Petitioner's claim that "the video shown to potential jurors about the court process and their roles before the jurors are subjected to voir dire violates his constitutional rights."  *Bennett*, 2021 WL 2929948, at *25.  But it denied the claim on the merits because Petitioner "d[id] not provide any analysis for this allegation, nor any law in support of this contention."  *Id.*  Respondent concedes that Petitioner presented this claim the state habeas court, and that he "included the general allegation in the issues presented to the Connecticut Appellate Court on appeal."  ECF No. 12 at 33.  But Respondent contends that this claim is not exhausted because "it does not appear that the petitioner's petition to the Connecticut Supreme Court includes this claim, either generally as to an allegation of jury bias, or specifically as to a claim about the video."  *Id.*

The Court disagrees.  Petitioner's petition for certification to the Connecticut Supreme Court raises a claim that mirrors the one rejected by the state habeas court and which Respondent acknowledges was exhausted at the trial level:  that Petitioner "was convicted by a tainted, partial, misinformed injury, due to the jury pool being show[n] and influenced by a state[-]sponsored video that contain[ed] crime photos, mix[ed] questions of laws and facts, without Petitioner's prese[nce]."  ECF No. 12-9 at 8 (cleaned up).  Thus, Petitioner exhausted a claim of jury bias relating to the presentation of the video in the Connecticut state courts.  Because the Petitioner "fairly presented" this claim to the Connecticut Supreme Court, it is exhausted.  *See Lopez*, 2023 WL 2384112, at *8.

29

7. *Claim 18*

Claim 18, an actual innocence claim, is not exhausted. *See* ECF No. 2 at 4. Petitioner

raised this claim in his amended state habeas petition, ECF No. 12-4 at 104, and the state habeas

court considered and rejected it. *See Bennett*, 2021 WL 2929948, at *29. But Petitioner failed to

raise the claim before the Connecticut Appellate and Supreme Courts. Petitioner's brief to the

appellate court contains no actual innocence claim. *See* ECF No. 12-8 at 3–5. Petitioner's petition

for certification to the Connecticut Supreme Court contains no such claim, either. *See* ECF No.

12-9 at 2. Accordingly, this claim is unexhausted.

8. *Claim 19*

Claim 19, which alleges prosecutorial misconduct, is likewise unexhausted. *See* Pet. Ex.,

ECF No. 2 at 4. Petitioner's amended state habeas petition contains a section entitled

"Prosecutorial Impropriety," but the section does not describe any specific instances of

prosecutorial misconduct. *See* ECF No. 12-4 at 102–03. Rather, Petitioner's specific allegations

of prosecutorial misconduct are embedded in his ineffective assistance of counsel claims, *see id.*

at 112–16, which the habeas court recognized and rejected. *See Bennett*, 2021 WL 2929948, at

*25–26 (rejecting Petitioner's claims that "trial counsel were ineffective for: 1) failing to seek a

mistrial after the prosecutor 'testified' numerous times; 2) failing to seek a mistrial after the

prosecutor asked leading questions on direct examination; 3) failing to seek a mistrial after the

prosecutor made inappropriate comments during closing argument").

Petitioner raised several *Brady* claims, which could be liberally construed as prosecutorial

misconduct claims, in his habeas appeal to the Connecticut Appellate Court. *See* ECF No. 12-8 at

3–4. But he did not reference his prior allegations regarding the prosecutor testifying, asking

leading questions, or making inappropriate comments during closing argument, as he did in his

state habeas petition. *See Bennett*, 2021 WL 2929948, at *25. The same is true of his petition for

30

certification to the Connecticut Supreme Court. *See* ECF No. 12-9. Because Petitioner did not present to the Connecticut reviewing courts "all of the essential factual allegations asserted in his federal petition[,]" he did not fairly present his claim to those courts. *See Daye*, 696 F.2d at 191. Accordingly, this claim is unexhausted.

### 9. In Sum

For the reasons stated above, Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 20 are exhausted. Claims 5, 13, 18, and 19 are unexhausted.

### 10. Futility

Exhaustion may be excused if the habeas petitioner can demonstrate that it would be futile, but Petitioner has failed to do so here. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). Exhaustion is futile when "there is an absence of available State corrective process," or when "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). "In other words, there must be *no opportunity* to obtain redress in state court or the state process must be *so clearly deficient* as to render *futile* any effort to obtain relief." *Jumpp v. Cournoyer*, No. 3:15-CV-00892 (VLB), 2016 WL 3647146, at *3 (D. Conn. June 30, 2016) (citing *Duckworth*, 454 U.S. at 3).

Petitioner alleges various impediments he has faced throughout his state court litigation in an attempt to show exhaustion of at least some claims would have been futile. *See* ECF No. 14 at 2 (alleging page limits were unfairly imposed upon him); ECF No. 28 at 13 (alleging "interference by official[s]" foreclosed him from being able to exercise his rights, and arguing that his claim of actual innocence "is a gateway for this Court's review") (cleaned up); ECF No. 32 at 3 (alleging the state appellate courts failed to articulate the reasons for their decisions).

These arguments do not specifically address why the four unexhausted claims were not capable of being exhausted; rather, they assert general grievances with the state process. Thus,

31

even if the Court were to assume these impediments were legitimate and actually interfered with Petitioner's ability to exhaust his claims,[19] Petitioner has not accounted for the fact that that sixteen of his claims were exhausted through the same proceedings in which he claims he faced impediments.  In other words, Petitioner has not identified any particular impediment to the four unexhausted claims that does not apply equally to the sixteen exhausted ones.   And Petitioner has not argued that any of the four unexhausted claims are procedurally barred by Connecticut law. *Cf. Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law").  Thus, it follows that there was no "absence of available State corrective process" or "circumstances . . . that render[ed] such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B).

Claims 5, 13, 18, and 19 are all unexhausted, not because of an external impediment, but because of Petitioner's failure to initiate these claims in the trial or habeas court and carry them through the state reviewing courts into his federal habeas action.   Accordingly, his failure to exhaust these claims in the Connecticut state courts may not be excused.

C.  Dismissal Without Prejudice

Because a single unexhausted claim will render a federal habeas petition "mixed," *see Rhines*, 544 U.S. at 273, the Court considers Petitioner's habeas petition containing four unexhausted claims to be mixed.

---

[19] The Court does not reach the merits of Petitioner's claims relating to futility, but it does note that the "actual innocence" doctrine requires "compelling evidence of innocence" such that "it is more likely than not that no reasonable juror would have convicted" Petitioner *before* the federal habeas court considers the merits of the petitioner's underlying claims. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Such evidence has not been presented here; accordingly, Petitioner cannot rely on his claim of actual innocence to overcome the exhaustion requirement.

32

Of the options available to the Court when presented with a mixed petition, dismissal without prejudice is most appropriate here. "When confronted with a mixed petition, a federal court has four procedural options: (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits under 28 U.S.C. § 2254(b)(2); (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims." *Henderson v. Reis*, No. 3:18-CV-1412 (SRU), 2023 WL 5677489, at *8 (D. Conn. Sept. 3, 2023).

The Court thus evaluates its options as outlined in *Henderson*. First, denial on the merits is unnecessary in this case. A court may outright deny a mixed petition on the merits where the claims are "plainly meritless," *Rhines*, 544 U.S. at 277, or "patently frivolous," *Cowans v. Artuz*, 14 F. Supp. 2d 503, 506 (S.D.N.Y. 1998). The Court exercises its discretion not to reach the merits of the unexhausted claims, and therefore does not believe denial of the petition on the merits is appropriate. *See id.* ("even under the AEDPA, the federal courts usually should defer to the state courts on unexhausted habeas claims").

Second, the Court will not stay the petition to permit Petitioner to exhaust the remainder of his claims in state court. Staying a federal habeas proceeding is generally disfavored because it frustrates the objectives of the exhaustion requirement; thus, a stay is available "only in limited circumstances." *Rhines*, 544 U.S. at 277. Staying a petition "frustrates AEDPA's objective of encouraging finality of state court judgments by allowing a petitioner to delay the resolution of the federal proceedings, and it undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court before filing his federal petition." *Id.* at 270. A stay should be granted "only where the district court determines there was good cause for the petitioner's failure to exhaust his claims." *Id.* For the same reasons as described

above, Petitioner has not shown good cause for his failure to exhaust the four unexhausted claims. Thus, a stay to facilitate exhaustion would be improper.

Of the remaining two options—dismissal without prejudice or deletion of unexhausted claims—dismissal is most appropriate.

To start, the existing petition fails to comply with the Local Rules all litigants in this court must follow. *See Guest v. Alzheimer's Res. Ctr.*, No. 3:08-CV-1247 (AWT), 2009 WL 1407284, at *3 (D. Conn. May 19, 2009) ("A party's *pro se* status does not excuse her from complying with the Federal Rules of Civil Procedure and this court's Local Rules"). The Local Rules state that "[p]etitions for writs of habeas corpus . . . "shall contain a short and plain statement of the claim made and the relief sought," D. Conn. L. Civ. R. 8(a). The Local Rules further provide that "[a] petition . . . not in compliance with this Rule shall be subject to dismissal without prejudice by the Court on its own motion." D. Conn. L. Civ. R. 8(a); *see also Carolina v. Connecticut*, No. 3:17-CV-754 (SRU), 2019 WL 4538464, at *2 (D. Conn. Sept. 19, 2019) (dismissing habeas petition without prejudice for, among other things, failing to comply with Local Rule 8 and the Rules Governing Section 2254 Cases in the United States District Courts).

Petitioner's petition, rather than clearly stating his claims for relief, points to the claims contained in its attachments. *See* ECF No. 1 at 5. The attachments then point to the exhibits. *See* ECF No. 2 at 2–4. These exhibits, totaling 1,541 pages, include a memorandum containing two pages of text on each page filed. *See* ECF Nos. 2-1; 2-2. The memorandum alone is 128 pages.

It is exceedingly difficult to consider the merits of Petitioner's exhausted claims based on the habeas petition as filed. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage"

34

(internal quotation marks omitted)); ECF No. 12 at 15 (expressing confusion over which claims Petitioner seeks to raise).  The present petition's violations of the Local Rules thus favor dismissal, without prejudice to refiling.

And dismissal will not unreasonably impair Petitioner's right to obtain relief on his exhausted claims, such that allowing Petitioner to proceed and deleting the unexhausted claims would be appropriate.  *See Henderson*, 2023 WL 5677489, at *8; *see also Lopez*, 2023 WL 2384112, at *4 (noting that the court "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief" (quoting *Rhines*, 544 U.S. at 278)).  This petition comes to the Court in a unique procedural posture; depending on whether the Connecticut Appellate Court rules in Petitioner's favor on Motion Two, the applicable statute of limitations either (a) expired on May 9, 2024, rendering this petition and any future federal habeas petition untimely, or (b) will expire nearly four months after the ultimate disposition of Motion Two.  If the Supreme Court determines that Motion Two was properly filed under Connecticut state law such that the Superior Court had jurisdiction over it in the first instance, Petitioner will have nearly four months in which to re-file his federal habeas petition.  Accordingly, dismissal of the entire petition would not "unreasonably impair" his right to re-file.

## IV.    CONCLUSION

Because Petitioner's federal habeas petition contains a mix of exhausted and unexhausted claims, and because the petition may be untimely, Respondent's motion to dismiss, ECF No. 11, is **GRANTED**.  Within fourteen days of the Connecticut Appellate Court's decision on Motion Two, Petitioner must notify the Court of the decision.  Then, if the AEDPA limitations period has not expired, Petitioner may file an amended habeas petition containing "a short and plain statement

of the claim made and the relief sought."  D. Conn. L. Civ. R. 8(a).  This amended habeas petition may contain Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 20 only, and must strictly comply with all procedural requirements, including the District of Connecticut Local Civil Rules.

The amended habeas petition may be accompanied by a memorandum explaining why the state court's treatment of these claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  This memorandum should not exceed 40 pages without the Court's advance permission.  *See* D. Conn. L. Civ. R. 7(a)5 ("Except by order of the Court, memoranda shall be double-spaced (except headings, footnotes, and block quotes) and shall be no more than forty (40) 8 1/2" by 11" printed pages, exclusive of pages containing a table of contents, table of statutes, rules or the like.").

**SO ORDERED** at Hartford, Connecticut, this 8th day of May, 2026.

       */s/ Sarala V. Nagala*
       SARALA V. NAGALA
       UNITED STATES DISTRICT JUDGE